UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

TRAVIS SANTELL LONGMIRE,

        Plaintiff,                    Case No. 2:20-cv-40

v.                                             Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**        **Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the Michigan Department

1

of Corrections, GOA/Mailroom Coordinator Unknown Kienitz, Warden Catherine Bauman, and Grievance Manager Richard D. Russell.

Plaintiff alleges that Defendant Kienitz and his mailroom staff opened mail from the Michigan Judicial Tenure Commission outside of his presence. Plaintiff states that the mail contained confidential information and that the Michigan Judicial Tenure Commission is a legitimate legal service organization.

Plaintiff seeks damages and equitable relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Michigan Department of Corrections

Plaintiff names the Michigan Department of Corrections (MDOC) as a Defendant in this action. Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for

money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

## IV. Legal mail

Plaintiff claims that Defendants Kienitz, Bauman, and Russell violated his constitutional rights when they authorized the opening of his mail from the Michigan Judicial Tenure Commission. Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987), *appeal dismissed*, 841 F.2d 1126 (6th Cir. 1988). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate).

Plaintiff asserts that he specifically requested that legal mail be opened in his presence in compliance with MDOC policy. Plaintiff claims that mail from the Michigan Judicial Tenure Commission qualifies as legal mail and should be treated as such by prison officials.

The question of whether a particular type of correspondence qualifies for the constitutional protection accorded a prisoner's "legal mail" is a question of law properly decided

by the court. *See Seal v. Morgan,* 229 F.3d 567, 580 (6th Cir. 2000) (stating that courts determine questions of law, juries determine questions of fact). *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).

> Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.

*Id.* at 874.

In *Sallier*, the Court addressed a prisoner's claim that mail from the American Bar Association (ABA) constituted legal mail for purposes of special handling by prison officials.

> Nothing on the envelope indicated that it contained confidential, personal, or privileged material, that it was sent from a specific attorney at the ABA, or that it related to a currently pending legal matter in which Sallier was involved. The ABA is a professional organization designed to support attorneys in a variety of ways; it is not an organization that has the authority to take action on behalf of an inmate. *Compare Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (finding that a letter from the National Prison Project, bearing the name of an attorney and stamped "Lawyer Client Mail Do Not Open Except In Presence of Prisoner" appears to come well within the definition of protected attorney-client legal mail). Given that the ABA is not a direct-services legal organization and generally does not provide legal advice and that the envelope contained no marking to alert a prison employee that it was to be opened only in the presence of the prisoner, receipt of this correspondence did not implicate constitutionally protected legal mail rights. *Cf. Boswell v. Mayer*, 169 F.3d 384, 388-89 (6th Cir. 1999) (upholding prison policy of treating mail from a state attorney general's office as protected legal mail only if (a) the envelope contains the return address of a licensed attorney and (b) the envelope has markings that warn of its privileged content); *Wolff* [*v. McDonnell*], 418 U.S. [539] at 576 [(1974)] (finding it entirely appropriate for a state to require any communication from an attorney to be specially marked as originating from an attorney, including the attorney's name and address, if the communication is to be given special treatment).

*Id.* at 875. The Sixth Circuit stated that, as a general rule, unless there is a specific indication to the contrary, an envelope from an organization such as the ABA may be opened outside the prisoner's presence without violating the First Amendment rights of a prisoner.

5

In *ACLU v. County of Livingston*, 796 F.3d 636 (6th Cir. 2015), the Sixth Circuit addressed a Livingston County Jail mail policy which required that "[a]ll mail, except bona-fide legal mail, will be by standard plain 4x6 postcards no images." The ACLU, through an attorney whose name and P-number appeared on the envelope, mailed letters to 25 named prisoners, indicating that it was considering challenging the mail policy's constitutionality, and asking the prisoner to return the enclosed form if he would like to speak with an ACLU representative. The envelope was conspicuously marked "legal mail." *Id.* at 640.

The jail interpreted its policy to define "bona-fide legal mail" as exclusively mail from an attorney who was, at the time of mailing, already in an established attorney-client relationship with the prisoner. It deemed the ACLU mail as mere solicitation, and it did not deliver any of the 25 letters, did not return them to sender, and did not notify either the prisoners or the ACLU that it had withheld the letters. It did, however, share the letters with its own attorney. The ACLU filed suit, claiming that the mail policy violated both the First Amendment and the Due Process Clause, and it sought a preliminary injunction to prevent the jail from failing to deliver mail from the ACLU. The district court granted preliminary relief, and Defendant appealed. The Sixth Circuit upheld the district court's decision. *Id.* at 640-645.

In addressing the jail's definition of "legal mail," the Court noted that, contrary to the jail's position, it had never suggested that "legal mail" requires an existing attorney-client relationship. *Id.* at 643. Relying on the decision in *Sallier,* the Court stated that mail that "*impacts upon or has import for* the prisoner's legal rights, the attorney client privilege, *or* the right of access to the courts" is properly considered legal mail. *Id.* (*citing Sallier*, 343 F.3d at 874.) The Court then referred to its decision in *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), where it defined legal mail to include the delivery of legal materials to a prisoner when they have been properly and

6

clearly marked as legal materials.  *Id.* (*citing Kensu*, 87 F.3d at 174).  The Court noted that in *Jones v. Caruso,* 569 F.3d 258 (6th Cir. 2009), the key issue was whether the communication implicated the right to petition for grievances or for access to the courts.  *Id.* (*citing Jones*, 569 F.3d at 267-68).  Finally, the Court referred to the holding in *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir. 1994), which held that mail from the Attorney General's office could constitute legal mail:

> [A]n inmate may correspond with the Attorney General regarding legal remedies, future prosecutions, or complaints about prison conditions, among other things, and the Attorney General's Office "*could* take action on behalf of an inmate, *or on behalf of the state* based upon information provided by an inmate." *Id.* (emphasis added).  Indeed, "any response from the Attorney General to a confidential inquiry may well be sensitive and confidential itself." *Id.*  What is important is that, as with "correspondence from any other legal assistance organization[,] . . . a prisoner has a fundamental interest in maintaining the confidentiality of such correspondence." *Id.*

*Id.* at 644.

The Sixth Circuit then noted that the letters sent by the ACLU to inmates at the Livingston County Jail were exactly the type of communication that an attorney and a prisoner would want kept confidential, despite the fact that there was not an existing attorney-client relationship.  Because the letters related to potential legal action against the same individuals who screened incoming mail, the importance of keeping the contents confidential was even more apparent.  The Court stated that because the letters were addressed to specific inmates, were clearly marked as legal mail, included the name and bar number of a licensed attorney, and offered legal advice regarding conditions at the jail, they were "legal mail" as a matter of law.  *Id.* at 644-45.

In support of his claim that incoming mail from the Michigan Judicial Tenure Commission should be considered legal mail, Plaintiff attaches a copy of an informational document from the Michigan Judicial Tenure Commission, which states that it was created to review written requests for investigation that allege judicial misconduct or disability.  The

document also states that all requests for investigation are treated as confidential.  (ECF No. 1-3, PageID.18.)  Plaintiff also offers a copy a step I grievance response to LMF-1911-1291-15B, which states:

> It was explained to Prisoner Longmire that Per PD 05.03.118; Prisoner Mail, Para FF: Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court Office, or the Office of the Legislative Corrections Ombudsman is considered legal mail.  The Michigan Judicial Tenure Commission does not meet this requirement therefore it was treated as regular mail.  Grievance is denied at Step I.

(ECF No. 1-4, PageID.20.)

The step II response to the grievance by Defendant Bauman stated that mail from the Michigan Judicial Tenure Commission does not meet the requirements for special handling of incoming legal mail and will continue to be sent as regular mail.  (ECF No. 1-5, PageID.22.)  The step III response by Defendant Russell stated that Plaintiff's claim had been investigated and that a proper decision had been rendered.  (ECF No. 1-6, PageID.24.)

A review of the pertinent caselaw makes clear that the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail and the nature of the contents.  Neither Plaintiff's allegations nor the attachments to Plaintiff's complaint show that the mail from the Michigan Judicial Tenure Commission was clearly marked as legal mail, or that it included the name and bar number of a licensed attorney.  Nor does Plaintiff state that the contents of the letter were anything more than the informational document offered by Plaintiff as an exhibit.  As noted above, not all mail to a prisoner from a legal source will implicate constitutionally protected legal mail rights.  *Sallier*, 343 F.3d at 874.  Nothing on the envelope indicated that it contained confidential, personal, or privileged material, that it was sent from a specific attorney at the Michigan Judicial Tenure Commission, or that it related to a

8

currently pending legal matter in which Plaintiff was involved. Therefore, Defendants' failure to open the mail in Plaintiff's presence did not violate Plaintiff's First Amendment rights.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   April 14, 2020         /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                CHIEF UNITED STATES DISTRICT JUDGE